UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06CV-306-R

LERA K. BRAEHLER                                                    PLAINTIFF

v.

FORD MOTOR COMPANY UAW                                             DEFENDANTS
RETIREMENT PLAN; and
FORD MOTOR COMPANY

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Docket #25). Defendants filed a response (Docket #28). Additionally, Defendants have filed a Motion to Dismiss (Docket #26). Plaintiff responded (Docket #27). These matters are now ripe for adjudication. For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

Ronald Braehler was an hourly employee of Ford, making him eligible for retirement benefits under the Ford Motor Company UAW Retirement Plan ("the Plan"). Mr. Braehler applied for regular early retirement and retired effective June 1, 2003. Mr. Braehler died on November 6, 2004.

Mr. Braehler was eligible for two separate retirement benefits under the terms of the Plan - a lifetime benefit and a survivor benefit. Upon retirement, the Plan calculated Mr. Braehler's retirement benefits, which took the form of an ERISA-qualified joint and survivor annuity ("QJSA"). Regarding the lifetime benefit, the Plan calculated and paid a monthly benefit to Mr. Braehler when he retired based upon his type of retirement, date of retirement, years of credited

service, and other factors set forth in the Plan documents.

Mr. Braehler was married successively to two women during his employment at Ford. Mr. Braehler and his first wife, Paula Fleming, obtained a Final Decree of Dissolution of Marriage ("Decree") entered by the Jefferson Family Court on May 3, 1994. The Decree incorporated the terms of a Property Settlement Agreement ("PSA") between Mr. Braehler and Ms. Fleming as filed with the Jefferson Family Court on April 20, 1994. Paragraph 10 of the PSA dealt with the Plan Benefits:

> 10.   <u>PENSION, PROFIT SHARING AND EMPLOYEE BENEFITS</u>
>
> . . .
>
> The Respondent's pension plan through Ford Motor Company shall be equally divided between the parties by execution of a Qualified Domestic Relations Order with [Ms. Fleming] receiving one-half of the benefits accrued therein from the date of marriage to the date of entry of a final decree; distributed at such time as the Respondent is eligible to receive same.

A Qualified Domestic Relations Order ("QDRO") was entered on November 21, 1994. The QDRO incorporated the terms of the Decree and the PSA as follows:

> A Final Decree of Dissolution of Marriage having been entered herein on May 3, 1994 providing that a [QDRO] be tendered in accordance thereto to divide [Mr. Braehler's] Pension Plan through Ford Motor Company, and the Court being otherwise sufficiently advised,
>
> IT IS HEREBY ORDERED AND ADJUDGED that pension benefits otherwise payable to [Mr. Braehler] under [the Plan] shall be divided and distributed in accordance with the following:
>
> 1. The Plan shall pay in accordance with the following to the alternate payee shown below a portion of the retirement benefits otherwise payable to the participant shown below:
>
>     a.   The amount payable to the alternate payee with respect to participant's pension benefits shall be 50% of the amount otherwise payable to such Participant as of May 4, 1994 pursuant to such plan. Said payment shall commence

upon participant's earliest retirement eligibility.

> b. The alternate payee shall be treated as a surviving spouse under the Plan and, accordingly, in the event of death of the participant either before or after commencement of retirement benefits, payment shall be made to the alternate payee as provided in the Plan for a surviving spouse.

Ms. Fleming was named as the alternate payee in the QDRO.

Subsequent to its entry by the Jefferson Family Court, the QDRO was submitted to Defendants. On December 12, 1994, Defendants sent a letter to Ms. Fleming and Mr. Braehler stating that the QDRO was acceptable. The letter further stated:

> It is our understanding that the amount payable, survivorship requirement and payment options to the alternate payee are as follows:
>
> 1. The monthly amount payable to the alternate payee will be 50% of the accrued life benefit as of May 4, 1994, excluding Plan improvements and excluding supplemental or temporary benefits, if payable.
>
> 2. The alternate payee is to be treated as a surviving spouse under the Plan.
>
> The alternate payee's portion is to be returned to the participant if alternate payee predeceases the participant.
>
> 3. Monthly payments to the alternate payee will commence when the participant commences retirement benefits. However, the order does provide that the alternate payee has the option to take her portion at the participant's early retirement eligibility.

Mr. Braehler married Plaintiff on June 21, 1997. Mr. Braehler applied for early retirement and retired effective June 1, 2003. In electing to retire, Mr. Braehler chose to receive his Plan benefits in the form of a QJSA. Mr. Braehler specifically designated Plaintiff as his surviving spouse. Ms. Fleming commenced receiving her portion of the Plan benefits at the time of Mr. Braehler's retirement. Mr. Braehler died on November 6, 2004. Defendants began paying to Ms. Fleming the entire surviving spouse benefit of $891.87 per month.

On December 28, 2005, Plaintiff filed a claim with Defendants requesting the surviving

spouse benefits.  Defendants failed to acknowledge the claim.  On February 22, 2006, Plaintiff sent Defendants a fax requesting them to provide a status on the claim.  Defendants failed to respond.  By letter dated Marcy 28, 2006, Plaintiff filed an appeal restating her claim for surviving spouse benefits.

By letter dated May 18, 2006, Defendants informed Plaintiff that her appeal had been received.  The letter indicated that the appeal would be presented to the Retirement Board Members on May 31, 2006.  Defendants responded to Plaintiff's appeal by letter dated June 1, 2006, indicating that the Board had determined that this was a matter between Plaintiff and Fidelity Investment Company, the Plan Administrator, advising Plaintiff that all further inquiries should be addressed to Fidelity.

Plaintiff filed the present action on June 21, 2006, to recover benefits she claims are due to her under the terms of the Plan and ERISA.

**STANDARD**

In *Wilkins v. Baptist Healthcare Systems, Inc.*, the Sixth Circuit held that § 502(a) actions were not subject to Federal Rule of Civil Procedure 56 motions.  150 F.3d 609, 617 (6th Cir. 1998).  Instead, this Court must conduct a *de novo* review based on the administrative record; it must render findings of fact and conclusions of law, *id.* at 619, unless the benefit plan gives the administrator discretion to determine eligibility or construe the plan's terms, in which case an arbitrary and capricious standard applies.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Here, the Plan grants its administrators such discretion.  The Plan provides in pertinent part:

> The [Plan] Board [of Administration] shall have jurisdiction to pass upon all questions concerning the application or interpretation of the provisions of the Plan which it is empowered to administer.  The Board shall decide all such questions in accordance with the terms of the Plan, and all such decisions of the Board shall be

4

final and binding . . . subject only to the arbitrary and capricious standard of judicial review.

When applying an arbitrary and capricious standard of review, this Court must determine whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1071 (6th Cir. 1994) (citing *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). If such an explanation is available, this Court must respect the decision of the claims administrator and uphold it. *Id.* In evaluating those decisions, this Court must consider only the evidence before the administrator at the time, *Daniel v. Eaton Corp.*, 839 F.2d 263 266-67 (6th Cir. 1988), and must account for potential conflicts of interest. *Kulkarni v. Metro. Life Ins. Co.*, 187 F. Supp. 2d 724, 727 (W.D. Ky. 2001) (citing *Bruch*, 489 U.S. at 115; *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)).

However, to the extent that Plaintiff's claim requires interpretation of the QDRO, the Defendants' interpretation is subject to *de novo* review. *Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 946 (6th Cir. 2000).

## ANALYSIS

ERISA section 206(d)(1) requires that "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). In 1984, Congress amended ERISA through passage of the Retirement Equity Act (REA) of 1984, Pub. L. No. 98-397, 98 Stat. 1426, in an effort to guarantee that private retirement income systems would provide fair treatment for women in divorce settlements. *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 419 (6th Cir. 1997). Among REA's provisions was an amendment to ERISA section 206(d) providing that the prohibition on alienation and assignment of benefits "shall not apply if the order is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). A qualified

domestic relations order ("QDRO") "is a type of domestic relations order which creates or recognizes an alternate payee's right to, or assigns to an alternate payee, the right to, a portion of the benefits payable with respect to a participant under a plan." *Boggs v. Boggs*, 520 U.S. 833, 846 (1997).  Compliance with a QDRO is mandatory; ERISA does not permit a pension fund to look beneath the surface of the QDRO.  29 U.S.C. § 1056(d)(3)(A); *see Blue v. UAL Corp.*, 160 F.3d 383, 385 (7th Cir. 1998).

Here, a QDRO was entered in Jefferson Family Court on November 21, 1994.  The parties agree that this order met the standards required to qualify as a QDRO under ERISA.  The QDRO provides in pertinent part:

> b.  The alternate payee shall be treated as a surviving spouse under the Plan and, accordingly, in the event of death of the participant either before or after commencement of retirement benefits, payment shall be made to the alternate payee as provided in the Plan for a surviving spouse.

Ms. Fleming was named as the alternate payee.

Plaintiff recognizes Ms. Fleming's claim to a portion of the surviving spouse benefits but argues that Defendants have inappropriately interpreted the QDRO in awarding Ms. Fleming the entire surviving spouse benefit.

"[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)).  The Court must first determine whether the terms of the QDRO are ambiguous as that will determine how the Court's interpretative analysis will proceed.  *Id.* at 105-06.  If an ambiguity exists, "the court will gather, if possible, the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under

which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Id.* (internal quotation omitted). However, "in the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Id.* (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). The Court will "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.*

The plain terms of the QDRO indicate that Ms. Fleming was to be treated as a surviving spouse under the Plan, and that upon Mr. Braehler's death payment would be made to Ms. Fleming as provided in the Plan for a surviving spouse. The QDRO does not affirmatively state that Ms. Fleming would only receive a portion of the surviving spouse benefits, rather it states that she will be treated as a surviving spouse. Although the QDRO references Ms. Fleming's treatment under the Plan as that of "a" surviving spouse rather than "the" surviving spouse, the Court does not find that this indicates that Ms. Fleming was to receive anything less than the full surviving spouse benefit. This Court finds that the plain terms of the QDRO require the Plan to pay Ms. Fleming the entire surviving spouse benefit. *See* 29 U.S.C. § 1056(d)(3)(A); *Blue*, 160 F.3d at 385.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendants' Motion to Dismiss is GRANTED.

An appropriate order shall issue.

7